1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9

KEVIN ILOFF,

Plaintiff,

v.

C. HERRERA, et al.,

Defendants.

_____/

CASE NO.     1:08-cv-1508-AWI-MJS (PC)

ORDER DISMISSING PLAINTIFF'S FIRST
AMENDED COMPLAINT, WITH LEAVE TO
AMEND, FOR FAILURE TO STATE A
CLAIM

(ECF No. 20)

SECOND   AMENDED   COMPLAINT   DUE
WITHIN THIRTY DAYS

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Plaintiff Kevin Iloff ("Plaintiff") is a state prisoner proceeding pro se in and forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

The Court previously screened Plaintiff's initial Complaint and dismissed it for failure to state a claim.  (Order, ECF No. 15.)  Plaintiff filed a First Amended Complaint on November 23, 2011. (Am. Compl., ECF No. 20.)  That Amended Complaint is now before the Court for screening.  Plaintiff again fails to state a claim.  Plaintiff will be given one more opportunity to amend.

25

**I.     SCREENING REQUIREMENT**

26

27

The Court is required to screen complaints brought by prisoners seeking relief

-1-

against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555).  Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not.  Id. at 1949-50.

## II.   PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff is a prisoner currently housed at Pleasant Valley State Prison ("PVSP"), where all of the events alleged in his Amended Complaint occurred.  Plaintiff brings a claim for violation of his First Amendment rights and also appears to be alleging violations of his rights under the Equal Protection Clause of the Fourteenth Amendment and the Religious

and Land Use and Institutionalized Persons Action ("RLUIPA").  Plaintiff brings this action against the following individuals: 1) James Yates, Warden of PVSP, 2) Wendy Myers, Community Partnership Manager, 3) C. Herrera, an appeals coordinator at PVSP, 4) E.H. Bells, Associate Warden of Central Services at PVSP, 5) K. Nash, a member of the Religious Review Committee at PVSP, 6) B. Farkas, a member of the Religious Review Committee at PVSP, 7) D. Stone, a member of the Religious Review Committee at PVSP, 8) J. Benavidez, a member of the Religious Review Committee at PVSP, 9) D. McGee, a member of the Religious Review Committee at PVSP, and Does 1-10, who were employed at PVSP or California Department of Corrections and Rehabilitation ("CDCR") who had the authority to make decisions regarding Plaintiff's ability to practice his religious beliefs.

Plaintiff's allegations are somewhat disorganized but can be outlined as follows:

Plaintiff is a practicing Odinist/Asatru.  (Am. Compl. at 3.)  This an earth/nature based religion recognizing the gods and goddesses of northern and western Europe. (Id.) Plaintiff explains beliefs associated with his religion, including, but not limited to, the following: his religion requires a striving for certain qualities such as courage, fidelity, truth; believers must honor their ancestors; and believers must learn two commandments. (Id. at 3-4.)  The religion requires use of religious artifacts such as the Hallowing Hammer, Gandr the Runic Wand, the Oath Ring, the Sacred Runes, the Mead Horn and Mead, incense, oils, herbs, Thor's Hammer, candles, and the Sacred Fire. (Id. at 5-6.)

Plaintiff was previously housed at California State Prison at Sacramento. ("CSP/SAC").  (Am. Compl. at 7.)  While there, he was allowed to order all of the religious

-3-

1   items he needed.  (Id.)[1]  Even though PVSP has a lower custody and security level than

2   CSP/SAC, religious artifacts permitted at CSP/SAC are not allowed at PVSP.  (Id. at 8.)

3          Plaintiff specifically alleges that his orders for religious artifacts were often denied.

4   (Am. Compl. at 8.)  Even some items  approved and ordered at PVSP were sent back

5   without a given reason.  (Id.)  Plaintiff sent Defendant Myers a request for a Hallowing

6   Hammer, and both Defendant Myers and her supervisor approved the order.  (Id.)  When

7   Plaintiff ordered the hammer and it arrived, it was detained by an R&R officer, and

8   Defendant Myers denied Plaintiff's request to have it returned to him.  (Id.)  Plaintiff had to

9   send the hammer home at his own expense.  (Id.)  Even though the hammer had the

10  dimensions shown in the catalog, Plaintiff was told that there were concerns about the

11  decorative studs and the weight of the hammer.  (Id. at 9.)  To allay these concerns,

12  Plaintiff offered to remove the studs and drill holes in the wood to lighten it.  (Id.)  Plaintiff's

13  offers to compromise were rejected.  (Id.)

14         Plaintiff was not allowed to order natural oils such as those Muslim inmates were

15  allowed.  (Am. Compl. at 9.)  This issue was raised in the Rouser case, and the Court in

16  that case eventually allowed inmates to order four different oils.  (Id.)  However, none of

17  these permissible oils can be used for Plaintiff's religious practices.  (Id.)  Plaintiff needs

18  natural oils because the oils are used to draw the spiritual essence of the gods and

19  goddesses into his sacred space.  (Id.)  Each oil has a vibration that corresponds to the

20  energies and essences of the gods and goddesses, as do the crystals, stones and other

[1] Plaintiff notes that a number of the issues raised in his Amended Complaint were addressed by the Court in the following cases: Rouser v. White, 630 F.Supp.2d 1165 (E.D. Cal. 2009) and Rouser v. White, 2010 WL 843764 (E.D. Cal. March 10, 2010).  Plaintiff has requested that the Court take judicial notice of these cases.  The Court is mindful of decisions in this area.  However, the inquiry here is whether Plaintiff's pleading states a claim.  As indicated below, the Court finds that it does not..

1  natural products required by Plaintiff's religion. (Id. at 9-10.) Plaintiff was denied the ability

2  to order these natural, required items without any valid penological reason. (Id.) Plaintiff

3  was allowed to order his required herbs, oils, and crystals while at CSP/SAC. (Id.)

4      Inmates at PVSP are only allowed one special religious purchase per quarter. (Am.

5  Compl. at 10.) As a result, every quarter, Plaintiff has to preplan for the following quarter

6  and account for the different group rituals, group ceremonies, and personal rituals. (Id.)

7  Plaintiff ordered the items needed each quarter, but the items were returned by PVSP

8  without reason and without notice to Plaintiff. (Id. at 11.) He learned of the returns only

9  when the supplying company credited his account. (Id.) These actions denied Plaintiff

10  religious artifacts necessary to the practice of his religion. (Id.) Plaintiff's inquiries to R&R

11  and Defendant Myers regarding his packages were not answered. (Id.)

12

13      Religious artifacts actually received were confiscated from inmates' cells,

14  desecrated and destroyed without any penological purpose. (Am. Compl. at 11.)[2] (Id.)

15  Items were removed from cells because inmates did not have receipts for them. (Id. at 12.)

16  They did not have the receipts for them because R&R would not give the receipts to them.

17  (Id.) After discussing the matter with inmates and R&R, Defendant Myers advised that

18  inmates would be getting copies of the receipts. (Id.) They are still not getting receipts and

19  prison officials are still confiscating artifacts because of lack of receipts. (Id.) Items

20  confiscated are destroyed, not held pending appeal as required. (Id. at 16.) Appeals

21  coordinators at PVSP refuse to process Odinist/Asatru inmates' appeals properly. (Id.)

22

23      Prison officials also count religious books toward a ten book limit, but Plaintiff's

24

25  _____

26    [2] Plaintiff is alleging unconstitutional actions were taken against other inmates. However, Plaintiff brings this suit under 42 U.S.C. § 1983 as an individual, not as a class action. He has no standing to seek damages for actions taken against others.

27

religion requires twenty books.  (Am. Compl. at 12.)  Prison officials have provided Odinist/Asatru inmates with only one small shared locker to store their books and artifacts. (Id.)  Other faiths have entire libraries stored in the chapel.  (Id.)  Odinist/Asatru adherents have their materials and books confiscated as fire hazards if they keep them in their cells. (Id.)  Prison officials will not allow inmates to order Kindles so books can be stored electronically.  (Id. at 12-13.)

Prison officials only allow inmates to wear Thor's Hammers on their way to and from chapel; Christian inmates are allowed to wear "theirs" all of the time.  (Am. Compl. at 13.)

PVSP has shown favoritism to the five faiths by hiring chaplains for them.  (Am. Compl. at 13.)  All five, except for Native American, are based on the Bible.  (Id.)  Officials at PVSP refuse to work with religions based on pagan beliefs.  (Id.)  The only chaplain left at PVSP, Chaplain McGee, refuses to help inmates with pagan beliefs.  (Id.)  This denies Plaintiff and similarly situated inmates equal protection and equal treatment.  (Id.)

Because several appeals relating to these issues have been filed, PVSP has created a Religious Review committee.  (Am. Compl. at 14.)  None of the committee members is of a pagan faith.  (Id.)  Plaintiff and other pagan inmates have no voice on the committee.  (Id.)  As a result, most of their issues and requests are denied.  (Id.)

PVSP denies Plaintiff and others the ability to light candles or incense or have lighters.  PVSP allows Odinist/Asatru inmates to have a lighter in the central control room for use when escorted to the Nature Base Religious Area.  (Id. at 14.)  However, this lighter is used by other pagan groups, and it takes weeks or months for it to be replaced when it runs out of fluid.  (Id.)  During such time Odinist/Asatru inmates can not freely express their religious beliefs by burning incense or herbs.  (Id.)

PVSP has also refused to build a fire pit in the Nature Base Religious Area, even though Native Americans are allowed to have one in their religious area. (Am. Compl. at 15.) PVSP has not provided any restrooms in the area, which causes problems when services are held there. (Id.)

PVSP officers also desecrate items in the Odinist/Asatru inmates' chapel locker and in their cells by throwing them about or confiscating them. (Id. at 15-16.)

Facility sergeant memoranda directing that Odinists be released at 9:00 am for Saturday services are ignored and Odinist/Asatru are taken to the area late. (Am. Compl. at 17.) All of the other religions are announced and leave on time. (Id.)

Plaintiff has filed this lawsuit as a member of the Hearth and Gothi and has filed appeals and complaints as a group and individually. (Am. Compl. at 18.)

Plaintiff asks for declaratory relief setting forth Odinist/Asatru inmates' rights and Defendants' obligations. (Id.) Plaintiff asks for both compensatory and punitive damages and that the Court enforce the mandates of RLUIPA.

## III.   **ANALYSIS**

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.

-7-

See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

### A.    Linkage Requirement

Under § 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 129 S.Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

The statute clearly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978). Government officials may not be held liable for the actions of their subordinates under a theory of respondeat superior. Iqbal, 129 S.Ct. at 1948. Since a government official cannot be held liable under a theory of vicarious liability in § 1983 actions, Plaintiff must plead sufficient facts showing that the official has violated the Constitution through his or her own individual actions. Id. at 1948. In other words, to state a claim for relief under § 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.

Plaintiff has not linked any individual Defendant to any of the harms he claims to have suffered. Plaintiff suggests that Defendant Yates and Myers have individually committed wrongful acts, but does not explain which acts and how they harmed Plaintiff. He does allege that they were aware of injustices faced by Odinist/Asatru inmates, but he

-8-

fails to explain how or when they were informed, how they reacted and what reasons were given for their actions.  Plaintiff only tangentially links other defendants to alleged wrongs. He alleges that Defendants Bells, Nash, Farkas, Stone, Benavidez, and McGee were part of the "R&R Committee" which was responsible for denying requests made by Odinist/Asatru inmates.  He does not explain which requests were made and denied, when the requests were denied, which Defendants were part of the committee when the denials were made, or what reasons each gave for the action.

In summary,  Plaintiff has not sufficiently linked each Defendant to his claims.  If Plaintiff chooses to file an amended complaint, he must explain what action each Defendant took that violated Plaintiff's rights and apply the standards set forth below to determine if it would even be possible to state a claim against any named Defendant.

### B.   Equal Protection

The Equal Protection Clause of the Fourteenth Amendment requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985).  An equal protection claim may be established in two ways. The first method requires a plaintiff to show that the defendant has intentionally discriminated against the plaintiff on the basis of the plaintiff's membership in a protected class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001).  Under this theory of equal protection, the plaintiff must show that the defendant's actions were a result of the plaintiff's membership in a suspect class, such as race, religion, or alienage.  Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005).

Here Plaintiff alleges that he was treated differently from individuals in other religious groups.  He has not alleged how he was  treated differently from "other similarity

situated" inmates or religious groups.   It appears Plaintiff is a member of a small group. He needs to allege facts suggesting that other small groups are given different, preferential treatment based on consideration of inappropriate factors.

In addition, though alleging discrimination based on class membership, Plaintiff has not attributed any specific unlawful discrimination to any particular Defendant.  If Plaintiff chooses to file an amended complaint he must explain which Defendants were responsible for which alleged violations and describe specifically how and when they denied him his said constitutional rights.

### C.   First Amendment

Plaintiff alleges that the failure to provide a chaplain, the prohibition of items needed to practice his religion, the obstacles to group worship, and the failure to prevent desecration of religious items violate his First Amendment right to freedom of religion.

Prison officials have no affirmative obligation to provide appropriate clergy for inmates. Ward v. Walsh, 1 F.3d 873, 880 (9th Cir. 1993).

Under the Constitution, "reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments." Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972). However, as with other First Amendment rights in the inmate context, prisoners' rights may be limited or retracted if required to "maintain [ ] institutional security and preserv[e] internal order and discipline." Bell v. Wolfish, 441 U.S. 520, 549 (1979).   Restrictions on access to "religious opportunities"-whether group services, chapel visits, or meetings with religious advisers-must be found reasonable in light of four factors: (1) whether there is a "valid, rational connection" between the regulation and a legitimate government interest put

-10-

forward to justify it; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) whether accommodation of the asserted constitutional right would have a significant impact on guards and other inmates; and (4) whether ready alternatives are absent (bearing on the reasonableness of the regulation).  Turner v. Safley, 482 U.S. 78, 89-90 (1987); see also Beard v. Banks, 548 U.S. 521 (2006); Mauro v. Arpaio, 188 F.3d 1054, 1058-59 (9th Cir. 1999) (en banc).

Certainly, prisons are allowed to place a variety of restrictions on religious worship for security purposes and other legitimate penological reasons.  See Pierce v. County of Orange, 526 F.3d 1190, 1209 (9th Cir. 2008).   Nevertheless, denial of access to all religious worship opportunities can violate the First Amendment.  Id.

In the event Plaintiff elects to file another amended complaint, he must allege how and why complained-of prison regulations are not reasonably related to a legitimate penological interest.  Plaintiff also must alleged specific acts by specific Defendants to deprive him of his constitutional rights.

Plaintiff has not stated a cognizable First Amendment claim.

**D.   RLUPIA**

Plaintiff also makes a claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA), which provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ..., even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-
>
> (1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest.

See Pub.L.No. 106-274, 114 Stat. 803 (2000) (codified at 42 U.S.C. § 2000cc-1).  Plaintiff

bears the initial burden of demonstrating that Defendants substantially burdened the exercise of his religious beliefs.  Warsoldier v. Woodford, 418 F.3d 989, 994-95 (9th Cir. 2005).  A "substantial burden" is one that is "oppressive to a significantly great extent."  Id. at 995 (internal quotations omitted).  It "must impose a significantly great restriction or onus upon [religious] exercise."  Id. (quotations omitted).  A substantial burden includes situations " 'where the state ... denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his belief."  Id.

If a plaintiff meets this burden, the defendants must demonstrate that "any substantial burden of [plaintiff's] exercise of his religious beliefs is *both* in furtherance of a compelling governmental interest and the least restrictive means of furthering that compelling governmental interest."  Id. (emphasis in original).  "RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs."  Id.

Plaintiff has not alleged how any individual Defendants' specific actions placed a **substantial** burden on the exercise of his religious beliefs.

## IV.    CONCLUSION AND ORDER

The Court finds that, as pled, Plaintiff's First Amended Complaint fails to state a claim upon which relief could be granted.  The Court will provide Plaintiff time to file an additional amended complaint to address the potentially correctable deficiencies noted above.  See Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Plaintiff should read this Screening Order carefully before preparing his second amended complaint.

In his second amended complaint, Plaintiff must demonstrate that the alleged incident resulted in a deprivation of his constitutional rights.  Iqbal, 129 S.Ct. at 1948-49.

-12-

Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555).  Plaintiff must also demonstrate that each named Defendant personally participated in a deprivation of his rights. Jones, 297 F.3d at 934.

Plaintiff should note that although he has been given one last opportunity to amend, it is not for the purposes of adding new claims.  Plaintiff should focus his second amended complaint on the violations of the Equal Protection Clause, First Amendment and RLUIPA.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  As a general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once an amended complaint is filed, the original complaint no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.  The second amended complaint should be clearly and boldly titled "Second Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is HEREBY ORDERED that:

1.     Plaintiff's First Amended Complaint is dismissed for failure to state a claim, with leave to file a second amended complaint within thirty days;

2.     Plaintiff shall caption the document "Second Amended Complaint" and refer to the case number 1:08-cv-1508-AWI-MJS (PC); and

/////

/////

-13-

3.     If Plaintiff fails to comply with this Order, this action will be dismissed for

failure to prosecute and failure to state a claim upon which relief may be granted.

IT IS SO ORDERED.

Dated:   March 28, 2012             /s/ *Michael J. Seng*
                                    UNITED STATES MAGISTRATE JUDGE